UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| W&W FIBERGLASS TANK COMPANY | CIVIL ACTION NO. 22-5837 |
| VERSUS | JUDGE DONALD E. WALTER |
| REED INDUSTRIAL SYSTEMS, LLC | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss for Lack of Jurisdiction filed by Third-Party Defendant Spiral Pipe of Texas, Incorporation ("SPOT"). See Record Document 22. For the reasons stated below, SPOT's motion to dismiss (Record Document 22) is **GRANTED.**

## BACKGROUND

This case arises from an alleged incident that occurred on October 28, 2021, at a manufacturing plant in Pampa, Texas. See Record Document 1 at 3. Plaintiff W&W Fiberglass Tank Company ("W&W") is a corporation organized under the laws of the state of Texas with its principal place of business in Gray County, Texas. See id. at 1. W&W brought suit against Reed Industrial Systems, LLC ("Reed"). Reed is a Louisiana limited liability company, owned by Thomas Kerr, Matthew Berry, and Brian Peters, who are citizens of Caddo Parish, Louisiana. See Record Document 15 at 1. Reed filed a third-party complaint against SPOT. See id. SPOT is a corporation organized under the laws of the State of Texas, with its principal place of business located in Fort Worth, Texas. See id.

On August 13, 2014, W&W alleges that it entered into a contract with Reed "for the design, manufacture, fabrication, and installation of a Stack and Ventilation System for W&W's manufacturing plant located in Pampa, Texas." Record Document 1 at 2. The original design for

the ventilation system allegedly included "two 111-feet tall exhaust stacks which were designed to be anchored to a concrete foundation adjacent to the manufacturing plant with multiple vertical sections joined by sixteen one-half inch bolts per joint and supported by guy-wires." Id. Reed alleges that on September 20, 2014, Reed contracted with SPOT to manufacture and fabricate the component parts of the two 111 feet ventilation stacks. See Record Document 15 at 3. Reed further alleges that it provided SPOT with the first set of plans which included the guy-wires and each section of the stacks to be secured with 16 one-half inch bolts. See id.

W&W alleges that the guy-wires were not suitable for the layout of W&W's plant, and therefore, W&W and Reed entered into a change order on or about October 19, 2014. See Record Document 1 at 3. The new design called for twenty one-half inch bolts connecting the vertical sections of each stack to provide additional security and stability in the absence of the guy-wires. See id. Reed contends that the change order was agreed upon on or about October 7, 2014, and it sent revised plans and specifications for the two 111 feet ventilation stacks to SPOT on or about October 7, 2014, in accordance with the change order entered into with W&W. See Record Document 15 at 2–3.

On October 28, 2021, W&W alleges that one of the two ventilation stacks failed at a section joint about thirty-five feet above ground level, blew over, and damaged both the stack and W&W's manufacturing plant. See Record Document 1 at 3. W&W claims that the stack did not comply with the revised plans which called for each section of the stacks to be secured with twenty one-half inch bolts. See id. Rather, W&W asserts that the sections of the stack were secured to one another with sixteen one-half inch bolts. See id. Therefore, W&W filed suit against Reed, and Reed filed a third-party complaint against SPOT. SPOT filed this motion to dismiss alleging that this Court may not exercise personal jurisdiction.

**LAW AND ANALYSIS**

I. **Personal Jurisdiction.**

Federal Rule of Civil Procedure 12(b)(2) authorizes a motion to dismiss for lack of personal jurisdiction. When a court decides a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing then a plaintiff must simply make a prima facie case of personal jurisdiction. See Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999). In deciding whether a prima facie case exits, the court must accept as true the plaintiff's "uncontroverted allegations and resolve in [its] favor all conflicts between the facts contained in the parties' affidavits and other documentation." Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000).

To exercise personal jurisdiction, a federal court sitting in diversity must satisfy both statutory and constitutional requirements. See Marathon Oil Co. v. A.G. Ruhrgas, 182 F.3d 291, 294 (5th Cir. 1999). The state's long-arm statute must confer jurisdiction over the defendant, and the court's exercise of personal jurisdiction must be consistent with the due process clause of the Fourteenth Amendment. See id. Louisiana's long-arm statute extends to the limits permitted by due process. See La. R.S. 13:3201(B). Consequently, the two inquiries for the exercise of personal jurisdiction "merge into one." Nuovo Pignone v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002). Therefore, the plaintiff must show that the defendant has purposefully availed himself of the protections and benefits of Louisiana by establishing "minimum contacts" in the state, and the exercise of the jurisdiction complies with traditional notions of "fair play and substantial justice." Jackson v. Tanfoglio Giuseppe, S.R.L., 615 F.3d 579, 584 (5th Cir. 2010). "Minimum contacts" may give rise to either general or specific personal jurisdiction. Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo., 615 F.3d 364, 368 (5th Cir. 2010).

## II. Analysis.

Reed's legal argument regarding whether this Court may exercise general or specific personal jurisdiction is ambiguous. Reed's position is simply that SPOT "clearly has systematic and continuous contacts with the forum state in this matter and has availed itself to the jurisdiction of this Court." Record Document 46 at 4. Though Reed does not differentiate between whether its analysis of SPOT's contacts with the forum demonstrate general or specific personal jurisdiction, the Court will address both in turn.

### A. General Personal Jurisdiction.

General personal jurisdiction empowers a court to hear "any and all claims" against a defendant whose contacts with the forum state are "continuous and systematic" such that the defendant is "at home" in the state. Daimler AG v. Bauman, 571 U.S. 117, 121, 134 S. Ct. 746, 751 (2014). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008). It is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007).

SPOT is a corporation organized under the laws of the State of Texas, with its principal place of business located in Fort Worth, Texas. See Record Documents 15 at 1 and 22-3 at 4. Therefore, for general personal jurisdiction to exist in a forum other than Texas, this would have to be the "exceptional case" where SPOT's corporate operations are "so substantial and of such a

4

nature as to render the corporation at home" in that forum. Daimler, 571 U.S. at 139 n.19, 134 S. Ct. 746.

The Court interprets Reed's position as SPOT's contacts are sufficient to permit the exercise of general personal jurisdiction because SPOT has contracted with Reed and shipped items it manufactured and fabricated to various locations across Louisiana on thirty-one separate occasions. See Record Document 46 at 4. For support, Reed submitted evidence indicating that (1) fourteen of those occasions took place between February 15, 2016, and September 16, 2020; (2) on February 15, SPOT sent $1,447.00 worth of spiral fittings to Reed's office in Shreveport, Louisiana, to be used at W&W's plant in Pampa Texas; and (3) SPOT shipped items ordered by Reed to various projects sites in Minden, Louisiana; Gretna, Louisiana; Roanoke, Louisiana; Lake Charles, Louisiana; Morgan City, Louisiana; Shreveport, Louisiana and Destrehan, Louisiana on sixteen separate occasions. See Record Documents 46 at 3–4 and 46-2 at 1–31.

SPOT counters Reed's position by acknowledging that Reed conflates the standards applicable to the analyses of general jurisdiction and specific jurisdiction. See Record Document 47 at 3. To confer general jurisdiction, the corporation must have "continuous corporate operations within a state [that are] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings entirely distinct from those activities*." Daimler, 571 U.S. at 119, 134 S. Ct. at 749 (emphasis added). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction. . . ." Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002). Whereas for specific jurisdiction, jurisdiction can be asserted where a corporation's in-state activities are not only "continuous and systematic, but *also give rise to the liabilities sued on*. . . ." Int'l Shoe

5

Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 317, 66 S. Ct. 154, 159 (1945) (emphasis added).

In Daimler, the Supreme Court held that the foreign corporation was not subject to general jurisdiction in California for injuries allegedly caused entirely outside the United States even though the defendant corporation had multiple facilities, including a regional headquarters, in California, distributed tens of thousands of cars in California, and generated billions of dollars in sales in California the year the suit was brought. See Daimler, 571 U.S. at 142, 134 S. Ct. at 763. Here, Reed has provided evidence that SPOT has contracted with Reed and shipped items it manufactured and fabricated to various locations across Louisiana on thirty-one separate occasions. See Record Documents 46 at 3–4 and 46-2 at 1–31. SPOT's corporate contacts with Louisiana are not of the exceptional nature such that SPOT could be found to be "at-home" in Louisiana. Therefore, this Court may not exercise general personal jurisdiction over SPOT. Alternatively, this Court will analyze whether it may exercise specific personal jurisdiction over SPOT.

### B. Specific Personal Jurisdiction.

Specific personal jurisdiction exists when the defendant's contacts with the state arise from or are directly related to the cause of action. See Marathon Oil, 182 F.3d at 295. To determine whether a court may exercise specific jurisdiction, the Fifth Circuit prescribes a three-step analysis: "(1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." Jackson, 615 F.3d at 585 (citing Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006)). The contacts, while not as substantial as those required for an exercise of general jurisdiction, may not be merely

"random, fortuitous, or attenuated." Clemens v. McNamee, 615 F.3d 374, 379 (5th Cir. 2010). Additionally, the contacts cannot result from the "unilateral activity of another party or third person." ITL Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 498 (5th Cir. 2012). It is well established in the Fifth Circuit that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." Freudensprung v. Offshore Tech. Servs., Inc., 379 F.3d 327, 344 (5th Cir. 2004) (internal citations omitted). The Fifth Circuit

> has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

Id. If the plaintiff successfully establishes the first two prongs, the burden shifts to the defendant to show that litigation in the forum state would be "'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to [its] opponent." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185 (1985).

Reed correctly asserts that "[s]pecific jurisdiction exists when a non-resident defendant's contacts with a forum state arise from, or are directly related to, the cause of action." Record Document 46 at 3 (quoting Wilson v. Belin, 20 F. 3d 644, 647 (5th Cir. 1994)). Reed submitted evidence indicating that (1) fourteen of those occasions took place between February 15, 2016, and September 16, 2020; (2) on February 15, SPOT sent $1,447.00 worth of spiral fittings to Reed's office in Shreveport, Louisiana, to be used at W&W's plant in Pampa Texas; and (3) SPOT shipped items ordered by Reed to various projects sites in Minden, Louisiana; Gretna, Louisiana; Roanoke, Louisiana; Lake Charles, Louisiana; Morgan City, Louisiana; Shreveport, Louisiana and Destrehan, Louisiana on sixteen separate occasions. See Record Documents 46 at 3–4 and 46-2 at

1–31. Despite providing the Court with the aforementioned evidence, Reed fails to analyze how this evidence supports the argument that this Court may exercise specific jurisdiction over SPOT.

SPOT asserts that this Court may not exercise specific jurisdiction over SPOT and relies on Freudensprung[1], Parker[2], and Hydrokinetics[3] as support. See Record Document 22-3 at 5–7. In Freudensprung, a Panamanian corporation, WWAI, contracted with a Texas-based corporation, OTSI, for the referral of consultants in the offshore oil and gas industry to WWAI. See Freudensprung, 379 F.3d at 332. Under the contract between WWAI and OTSI, OTSI referred Freudensprung to WWAI to perform consulting work for WWAI at one of its projects in Nigeria. See id. at 333. Freudensprung was subsequently injured while performing the work for WWAI in Nigeria and sued WWAI in federal court in Texas. See id. Freudensprung argued that WWAI purposely availed itself of the benefits and protections of Texas by

> (1) contracting with OTSI, a Texas-based corporation, pursuant to the Offshore Personnel Supply Agreement; (2) contemplating arbitration of any disputes with OTSI arising under that contract in Houston, Texas; (3) initiating and contemplating a long-term business relationship with OTSI; (4) engaging in communications with OTSI in developing and carrying out that contract; and (5) wiring payments to OTSI in Texas.

Id. at 344. The Fifth Circuit held that WWAI's contacts with Texas through this contract with OTSI were insufficient to confer specific jurisdiction over WWAI. The Fifth Circuit held that these contacts with Texas "do not indicate that WWAI intended to avail itself of the privilege of doing business in Texas," particularly considering that "the material portions of the contract . . . were to be performed in West Africa, not Texas," the forum state. Id. at 344–345.

---

[1] Freudensprung, 379 F.3d 327.
[2] Parker v. Pro-West Contractors, LLC, 2013 WL 431046 (W.D. La. 2013); Parker v. Pro-West Contractors, LLC, 536 F. App'x. 400 (5th Cir. 2013).
[3] Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026 (5th Cir. 1983).

In Parker, a government body in Alaska awarded a contract to Pro-West, an Alaska LLC, for work on a bridge in Alaska. See Parker, 2013 WL 431046, at *1. Parker, a Louisiana subcontractor, submitted a bid to Pro-West, and Pro-West accepted the bid. See id. at *2. After performing the work on the bridge in Alaska pursuant to the subcontract with Pro-West, Parker sued Pro-West in this Court for a breach of contract claim. See id. at *1. Parker claimed this Court had specific personal jurisdiction over Pro-West because it conducted business with Parker and its employees had multiple phone calls and emails with Parker regarding the project. See id. at *5. This Court found that the contacts between Pro-West and Louisiana were insufficient to support the exercise of personal jurisdiction over Pro-West in Louisiana and noted the fact that Parker initially reached out to Pro-West regarding the subcontract for work on the bridge in Alaska. See id. at *5–6. On appeal, the Fifth Circuit affirmed. See Parker, 536 F. App'x. at 400–402.

Lastly, in Hydrokinetics, the plaintiff, Hydrokinetics, was a Texas corporation, and the defendant, Alaska Mechanical, was an Alaska corporation. See Hydrokinetics, 700 F.2d at 1027. The parties entered into a contract governed by the laws of the state of Alaska which provided that Hydrokinetics would manufacture and deliver to Alaska Mechanical five waste heat recover silencer units. See id. Hydrokinetics sued Alaska Mechanical in federal district court in Texas for breach of contract. See id. The Fifth Circuit found that the federal district court in Texas lacked personal jurisdiction over Alaska Mechanical, even though Alaska Mechanical (1) agreed to purchase goods made in Texas; (2) engaged in extensive communication with Hydrokinetics regarding the goods to be provided to Alaska Mechanical; (3) had employees that traveled to Texas to visit Hydrokinetic's equipment and facilities; (4) finalized the contract with Hydrokinetics while those employees of Alaska Mechanical were in Texas; and (5) agreed to make payment to Hydrokinetic in Texas. See id. at 1029. The Fifth Circuit reasoned that only a single transaction

9

was involved, governed by Alaska law, which was Alaska Mechanical's sole contact with the forum state; no performance by Alaska Mechanical was to take place in Texas, other than the payment for the goods; and the goods were to be delivered in the state of Washington. See id.

SPOT argues that its contacts with Louisiana are akin to the out of state defendants' contacts with the forum states at issue in cases summarized above. SPOT submitted a declaration by Stephen Homan, SPOT's controller, and a declaration by Steve Dockery, a former employee of SPOT, into evidence. See Record Documents 22-1 and 22-2. The declarations support the assertions that: (1) Reed reached out to SPOT and requested a quote from SPOT for the price of the stacks; (2) the work necessary to provide the quote to Reed took place in Texas; (3) no SPOT employees traveled to Louisiana in connection with the contract for or the building of the stacks; (4) SPOT built the stacks in Fort Worth, Texas; and (5) SPOT delivered the stacks to Pampa, Texas to be installed. See Record Documents 22-1 at 1–2 and 22-2 at 1–3.

The Court finds that the material portions of the contract were to be performed in Texas. No performance of the contract by SPOT was to take place in Louisiana. The only performance in Louisiana was on Reed's behalf. Considering the totality of the facts of this case, SPOT did not purposefully avail itself of the privilege of conducting business within Louisiana or invoke the benefits and protections of Louisiana law. This Court does not have specific personal jurisdiction over SPOT.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that SPOT's motion to dismiss (Record Document 22) is **GRANTED**. All claims filed against SPOT are **DISMISSED WITHOUT PREJUDICE** for want of personal jurisdiction.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 4th day of March, 2024.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE