UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| W&W FIBERGLASS TANK COMPANY | CIVIL ACTION NO. 22-5837 |
| VERSUS | JUDGE DONALD E. WALTER |
| REED INDUSTRIAL SYSTEMS, LLC | MAGISTRATE JUDGE HORNSBY |

---

## MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by Defendant Reed Industrial Systems, LLC ("Reed"). See Record Document 30. Plaintiff W&W Fiberglass Tank Company ("W&W") filed an opposition. See Record Document 34. For the reasons stated below, Reed's motion for summary judgment (Record Document 30) is **GRANTED.**

## BACKGROUND

On August 13, 2014, W&W entered into a contract with Reed for the design and installation of a "Stack and Ventilation System" for W&W's manufacturing plant located in Pampa, Texas. Record Document 30-4 at 1–2. The total contract price was $672,590.00. See id. Reed charged $540,316.00 for the ventilation system and $132,274.00 for the installation. See id. For the cost of the ventilation system, Reed charged approximately $67,259.00 to design and engineer it. See Record Document 30-3 at 2. The ventilation system was a "custom design" by Reed for a single application at W&W's specific location. Id. After designing, Reed hired subcontractors to fabricate the component parts. See id. The construction of the ventilation system was completed in May of 2015, and the operations of the system began in June of 2015. See Record Document 1 at 3.

The original design for the ventilation system allegedly included "two 111-feet tall exhaust stacks which were designed to be anchored to a concrete foundation adjacent to the manufacturing

plant with multiple vertical sections joined by sixteen one-half inch bolts per joint and supported by guy-wires." Id. at 2. W&W asserts that the guy-wires were not suitable for the layout of W&W's plant, and therefore, W&W and Reed entered into a change order on or about October 19, 2014. See Record Document 1 at 3. The new design called for twenty one-half inch bolts connecting the vertical sections of each stack to provide additional security and stability in the absence of the guy-wires. See id.

On October 28, 2021, W&W alleges that one of the two ventilation stacks failed at a section joint about thirty-five feet above ground level, blew over, and damaged both the stack and W&W's manufacturing plant. See id. W&W claims that the stack did not comply with the revised plans, which called for each section of the stacks to be secured with twenty one-half inch bolts. See id. Rather, W&W asserts that the sections of the stack were secured to one another with sixteen one-half inch bolts. See id.

As a result, W&W filed suit against Reed, asserting that the stack was defectively manufactured. W&W seeks relief pursuant to the Louisiana Products Liability Act and the Louisiana law of redhibition. Reed filed this motion for summary judgment arguing that W&W's claims are perempted pursuant to Louisiana Revised Statute 9:2772.

## LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248, 106 S. Ct. 2505, 2510 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. See id. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (quoting Fed. R. Civ. P. 56(c)).

**B. Peremption.**

Peremption is a period of time fixed by law for the existence of a right, and it may not be renounced, interrupted, or suspended. See Naghi v. Brener, 2008-2527, 17 So. 3d 919, 923 (La. 6/26/09) (citing La. Civ. Code arts. 3458, 3461). "Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." Id. (citing La. Civ. Code art. 3458). Because peremptive statutes are strictly construed against peremption and in favor of the claim, when there is more than one possible construction, "the one that maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted." Id. (internal citations omitted).

Louisiana law provides for a five-year peremptive period for cases arising out of construction contracts:

> [N]o action . . . including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property . . . shall be brought . . . against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property . . . .
>
> (1) (a) More than five years after the date of registry in the mortgage office of acceptance of the work by owner.

3

> (b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner.

La. R.S. 9:2772(A). For this statute to apply, Reed must establish (1) that more than five years have elapsed since the owner recorded acceptance of the work, or that more than five years and six months have elapsed since the owner took possession of the building; (2) that Reed manufactured the ventilation system pursuant to a construction contract, as opposed to a sales contract; and (3) that the ventilation system was either immovable property or an improvement thereto. See Swope v. Columbian Chems. Co., 281 F.3d 185, 201 (5th Cir.2002); Summerfield v. Harnischfeger Indus., Inc., No. 97-3683, 1998 WL 726080, *2 (E.D.La.1998); Poree v. Elite Elevator Servs., Inc., 665 So.2d 133, 135 (La.App. 4 Cir. 11/16/95); Smith v. Arcadian Corp., 657 So.2d 464, 467 (La.App. 3 Cir. 5/31/95); ConstructionSouth, Inc. v. Fire Windows & Doors, Inc., No. 12-1258, 2013 WL 3242728, at *2 (E.D. La. June 25, 2013). W&W does not dispute the first and third requirements. Thus, the disposition of Reed's motion for summary judgment depends entirely on whether the contract was a construction contract or a sales contract.

Section 9:2772 applies only to contracts of construction, not to contracts of sale. See Riley Stoker Corp. v. Fid. & Guar. Ins. Underwriters, Inc., 26 F.3d 581, 591 (5th Cir.1994) (citing DeWoody v. Citgo Petrol. Corp., 604 So.2d 92, 99 (La.App. 3d Cir. 6/24/92). To determine "whether a contract is a construction contract or a sales contract, Louisiana courts generally weigh the economics of the situation to determine whether the primary obligation is one 'to give' [sales contract] or 'to do' [construction contract]." Harris v. Black Clawson Co., 961 F.2d 547, 553 (5th Cir.1992) (internal citations omitted). For example, the sale of an off-the-shelf product, such as "air conditioners, glass windows and doors," is primarily an obligation to give. Id. Conversely, an "artist's obligation to use his skill in painting [a] picture" is an obligation "to do." KSLA-TV, Inc.

4

v. Radio Corp. of Am., 501 F. Supp. 891, 894 (W.D. La. 1980). When a contract contains elements of both a construction contract and a sales contract, the Court must analyze the contract to determine which of the two obligations is fundamental. Smith, 657 So.2d at 468.

The determination of whether the contract is a sales contract or a construction contract is made on a case-by-case basis. See Poree, 665 So. 2d at 135. Courts sometimes make this determination based on a three-factor test:

> First, in a contract to build, the "buyer" has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Third, and perhaps most importantly, a building contract contemplates not only that one party will supply the materials, but also that that party will furnish his skill and labor in order to build the desired object.

Duhon v. Three Friends Homebuilders Corp., 396 So.2d 559, 561 (La.App. 3d Cir. 3/11/81). Courts may also utilize the "value test" to determine "whether the labor expended in constructing the item, or the materials incorporated therein, constitute the 'principal value of the contract.'" Alonzo v. Chifici, 526 So. 2d 237, 241 (La.App. 5 Cir. 4/18/88). Lastly, courts may also pay particular attention to "the extent to which the manufacturer custom designed the product for the purchaser," or whether the product was merely "a stock item." Summerfield, 1998 WL 726080, at *4; Poree v. Elite Elevator Servs., Inc., 711 So. 2d 816, 818–19 (La. App. 4 Cir. 4/8/98).

Both parties rely on the Louisiana Fourth Circuit's ruling in Poree v. Elite Elevator Services, Inc., 665 So.2d 133 (La. App. 4 Cir. 11/16/95). In Poree, a plaintiff was injured when she attempted to get out of an elevator at a high school. See id. at 134. The plaintiff sued an elevator company for negligence, and the elevator company argued that the claim was perempted pursuant to Louisiana Revised Statute 9:2772. See id. To build the school, the school board contracted with a contractor. See id. at 135. Then, the contractor subcontracted an elevator company because the contractor "lacked the technical knowledge and skill necessary for construction of an elevator. . .

5

." Id. Therefore, the elevator company built and installed the elevator in the high school. See id. As a result, the court held that the evidence submitted "clearly establishe[d]" that the elevator company was a subcontractor within the meaning of Louisiana Revised Statute 9:2772, and therefore, all claims against the elevator company were perempted. Id. at 135–136.

Three years later, the Louisiana Fourth Circuit issued another ruling, Poree v. Elite Elevator Services, Inc., 711 So. 2d 816 (La. App. 4 Cir. 4/8/98), addressing whether claims against a corporation that furnished designing, planning, and engineering services for the elevator were also perempted pursuant to Louisiana Revised Statute 9:2772. The court acknowledged that the elevator was "constructed, installed and erected" by the elevator company, not the corporation. Id. at 819. However, the court explained that the elevator was not a stock item; it was "custom-designed and engineered to meet the school's particular requirements" by the corporation. Id. As a result, the court found that the corporation fell within the scope of Louisiana Revised Statute 9:2772 because the corporation had performed the "design and engineering" of the elevator, even though it had not performed the "construction, installation, or inspection" of the elevator. Id.

In contrast, the Louisiana Second Circuit examined whether a product manufacturer of a central heating unit can receive the benefits of Louisiana Revised Statute 9:2772. See Jones v. Crane Co., 653 So. 2d 822, 826 (La. App. 2 Cir. 4/5/95). According to the defendant's affidavits, the evidence showed that the product manufacturer did not install the unit nor design or manufacture the unit specifically for that particular house. See id. at 7. As a result, the court found that the sale of a standard heating unit was a sales contract "to give" because "[t]he unit appear[ed] to be a typical central heating unit." Id. Thus, the product manufacturer did not fall within the scope of Louisiana Revised Statute 9:2772. See id.

6

Reed submitted an affidavit from Jimmie Talbot ("Talbot"), who is "employed as a Design Engineer for Reed since August 11, 2003." Record Document 30-3 at 1. Talbot testified that he designed the ventilation system based on the contract between W&W and Reed. See id. at 2. Additionally, Reed submitted an affidavit from Thomas Kerr ("Kerr"), the owner of Reed. See Record Document 30-3 at 1. Kerr testified that the ventilation system was a custom design for a single application at W&W's specific location. See id. Kerr further testified that all "custom designs are designed and fabricated by Reed from scratch." Id. Additionally, Kerr stated that the ventilation system is not one carried by Reed's inventory and that Reed hired subcontractors to fabricate the component parts. See id. Lastly, Kerr attested that of the total contract price of $672,590.00, Reed charged approximately $67,259.00 for the design and $132,274.00 for the installation of the ventilation system. See id. at 2. Therefore, Reed's position is that it falls within the scope of the peremptive statute because all obligations performed by Reed were obligations "to do."

W&W counters and argues that the delivery of the stack and ventilation system was the predominant object of the contract, not the installation. See Record Document 34 at 2. To support this position, W&W asserts that the installation cost of the contract was $132,274.00, which is less than 20% of the total contract price of $672,590.00. See id. at 7. Additionally, W&W maintains that the contract does not read like a typical construction contact because it lacks insurance requirements, payment and performance bond requirements, and indemnification and defense provisions in the event of injuries during performance. See id. Therefore, it is W&W's position that Reed is not entitled to the benefit of Louisiana Revised Statute 9:2772 because the contract is a contract "to give."

The undisputed facts are that the contract required Reed to custom design the ventilation system for W&W's specific location and install the ventilation system. Reed's obligation to use its design and engineering skills to create the ventilation system is akin to an artist's obligation to use his skill to paint a picture. See KSLA-TV, 501 F. Supp. at 894 (illustrating that an "artist's obligation to use his skill in painting [a] picture" is an obligation "to do"). Therefore, the Court finds that the predominant objects of the contract were obligations "to do." Additionally, the Court finds that Reed falls within the scope of Louisiana Revised Statute 9:2772 because it performed the design and installation of the ventilation systems. See generally Poree, 711 So.2d at 819 (finding that a corporation that performed the "design and engineering" of an elevator fell within the scope of Louisiana Revised Statute 9:2772). Since the peremption statute is applicable, the burden shifts to W&W to show the action has not prescribed. W&W fails to meet this burden. Thus, W&W's claims against Reed are perempted pursuant to Louisiana Revised Statute 9:2772.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Reed's motion for summary judgment (Record Document 30) is **GRANTED**. All W&W's claims filed against Reed are **DISMISSED.**

A judgment consistent with the instant Memorandum Ruling shall be issued herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 30th day of July, 2024.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE